UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FRANKIE DELISE, | : | |
| | : | |
| Petitioner, | : | CIVIL NO. 3:03CV382 (JCH) |
| | : | |
| v. | : | |
| | : | |
| KUMA DEBOO, HARLEY G. LAPPIN, | : | |
| | : | |
| Respondents. | : | JUNE 14, 2004 |

**RESPONSE TO AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

Pursuant to the Order of this Court on May 7, 2004, the Respondents, Kuma DeBoo and Harley G. Lappin, hereby respectfully submit this response to the Amended Petition for Writ of Habeas Corpus in the above-captioned action. For the reasons set forth below, the relief sought in this amended petition should be denied.

**I.      Procedural Background**

On March 6, 2003, the Petitioner, Frankie DeLise ("Petitioner") filed a pro se Petition for Writ of Habeas Corpus in connection with medical treatment she is receiving at the Federal Correctional Institution (FCI) in Danbury, Connecticut. Two respondents were named in this petition: Kuma Deboo, Warden at FCI Danbury, and Kathleen Hawk-Sawyer, former Director of the Federal Bureau of Prisons. On April 30, 2003, this Court issued an Order to Show Cause why the petition should not be granted, with a response due June 25, 2003. On June 9, 2003, the Court appointed counsel for the Petitioner pursuant to 18 U.S.C. § 3006(a)(2)(B) and Local Rule

NO ORAL ARGUMENT IS REQUESTED

83.10(b)6.  While Respondents were prepared to file a response to the pro se petition arguing that all the claims in the petition were moot, Petitioner's appointed counsel requested that Respondents stay their response so that she could investigate the Petitioner's claims and to confer with Petitioner to determine if an amended petition was appropriate.  To accommodate this request, undersigned counsel sought and obtained four continuances of the Court's April 30, 2003 Order, up to and including September 25, 2003.

On September 25, 2003, a telephonic status conference was held among counsel of record and the Honorable Holly B. Fitzsimmons, United States Magistrate Judge.  As a result of that conference, a scheduling order was issued which excused Respondents from responding to the petition of March 6, 2003, and which ordered the filing of any amended petition within 30 days, or by October 25, 2003.   Thereafter, Petitioner's counsel sought and obtained four extensions of this deadline, up to and including March 12, 2004.  On March 15, 2004, Petitioner filed a Motion for Permission to file an Amended Petition, which motion was granted by the Court on March 29, 2004.  On May 7, 2004, during a telephonic status conference, the Court ordered the Respondents to file a response to the Amended Petition by June 11, 2004.  Respondents herein comply with this Order of the Court.[1]

## II. Relevant Factual Background

Petitioner, Frankie B. Delise, Register Number 40043-037, is a federal inmate incarcerated at the Federal Correctional Institution (FCI) in Danbury, Connecticut.  On August 4, 1999, she was sentenced in the United States District Court for the Eastern District of Virginia to

---

[1] Respondents submit their response today, June 14, 2004, because the district court was closed on June 11, 2004 in light of the passing of former President Reagan.

a 300-month term of imprisonment on federal drug charges.  Assuming she receives all Good Conduct time available to her under 18 U.S.C. § 3624 (b), her projected release date will be September 19, 2020, via Good Conduct Time release.  See Document 1a, appended to the attached Declaration of Attorney Advisor Ann Zgrodnik dated June 9, 2004 ("Zgrodnik Dec.").

On November 15, 2001, Petitioner was designated to the Federal Correctional Institution, Danbury, Connecticut, for service of her sentence.  See Document 1a.  She arrived at FCI Danbury with a history of Hepatitis C.  As outlined in the attached declaration from FCI Danbury Clinical Director John C. D'Avirro, M.D. ("D'Avirro Dec."), Petitioner has been seen and followed for Chronic Hepatitis C since her first visit in the Infectious Disease Clinic on April 8, 2002.  See D'Avirro Dec., ¶ 3.  On April 8, 2002, Petitioner was scheduled for a liver biopsy, which occurred on May 3, 2002.  The liver biopsy confirmed that Petitioner had Chronic Hepatitis, Grade 3, Stage 3.  Id.

In accordance with BOP Clinical Practice Guidelines, a viral load count test is drawn prior to treatment.  Under the BOP Clinical Practice Guidelines dated July, 2001, after approximately 24 weeks of treatment, the viral load count is checked to determine the course of treatment.  See D'Avirro Dec., ¶7.  In accordance with the new BOP Clinical Practice, a viral load test is drawn after approximately 12 weeks of therapy.  See D'Avirro Dec., ¶11.  This test is compared with initial viral load test.  If a positive response exists, treatment is extended for 36 weeks (total of 48 weeks course of treatment.  See D'Avirro Dec., ¶11.

Petitioner underwent an initial viral load (count) test on June 10, 2002.  See D'Avirro Dec., ¶¶ 4-5.  The test indicated that Petitioner's viral load was greater than 850,000.  See D'Avirro Dec., ¶ 5.  Test results also indicated that she had genotype 1b.  Id. On July 29, 2002,

Dr. D'Avirro submitted a request to the Central Office for Petitioner to receive interferon/ribavirin drug therapy for the treatment of Hepatitis C, genotype 1. See D'Avirro Dec., ¶ 8. On August 1, 2002, Central Office approved for Petitioner to receive treatment. Id.

On October 25, 2002, Petitioner was started on treatment of pegylated interferon and ribavirin, and thereafter received a weekly injection. See D'Avirro Dec., ¶ 10. On January 24, 2003, Petitioner's dosage of pegylated interferon and ribavirin was changed. Id. It was then determined that the 12 week time frame to conduct a sample viral load in accordance with BOP Clinical Practice Guidelines would be waived until the 24 week time frame. See D'Avirro Dec., ¶¶ 13.

Petitioner challenged the therapy treatment she is receiving at FCI Danbury via the first tier of the BOP's three tiered Administrative Remedy Program. On October 3, 2002, she submitted a request for Administrative Remedy alleging that the treatment she is receiving for Hepatitis C, Genotype I, is incorrect. See Zgrodnik Dec., Document 1b, Request for Administrative Remedy, Case Number 279731-F1, and response thereto. She requested that she be treated for one year. Id. On October 21, 2003, FCI Danbury's Warden denied Petitioner's request due to the fact that she was receiving treatment for Hepatitis C consistent with the Bureau of Prisons' Clinical Practice Guidelines. Id.

On October 28, 2002, Petitioner submitted a Regional Administrative Remedy Appeal. See Zgrodnik Dec., Document 1c, Regional Administrative Remedy Appeal, Case Number 279731-R1, and response thereto. Petitioner argued that she was not receiving adequate medical treatment for Hepatitis C. She requested to receive 48 weeks of interferon/ribavirin treatment. Id.

In a response dated November 27, 2002, Petitioner's appeal was denied. <u>See</u> Zgrodnik Dec., Document 1c.  The Regional Director explained to Petitioner that she has been approved for a six month treatment plan of interferon/ribavirin medication therapy.  <u>Id</u>.  It was explained that after six months of treatment, a viral load test will be conducted to determine the effectiveness of the treatment, and whether she should have continue with treatment. <u>Id</u>.

On December 4, 2002, Petitioner submitted a Central Office Administrative Remedy appeal to the National Inmate Appeals Administrator challenging the Regional Director's response.  In her appeal, Petitioner reiterated the argument that she should be receiving 12 months of treatment for Hepatitis C and objected to BOP policy.  <u>See</u> Zgrodnik Dec., Document 1d, Central Office Administrative Remedy Appeal, and response, Case Number 279731-A1.

In a response dated January 9, 2003, the National Inmate Appeal's Administrator denied Petitioner's appeal.  In its response, the Appeals Administrator explained that Petitioner is receiving the appropriate medical treatment consistent with nationally recognized guidelines and community standards.  <u>See</u> Document 1d.  The Appeals Administrator further explained to Petitioner that her viral load will be checked at 24 weeks of treatment to determine whether further treatment is beneficial.  <u>Id</u>.

On or about May 2, 2003, Petitioner underwent a viral load test.  <u>See</u> D'Avirro Dec., ¶ 16. The results of the test were received on June 2, 2003 which revealed that she had a viral load count of less than 600.  <u>Id</u>.  Based on BOP Clinical Practice Guidelines for viral hepatitis, these results warranted Petitioner to continue with the pegylated interferon/ribavirin course of treatment. <u>See</u> D'Avirro Dec., ¶¶16-17.

Petitioner was continued on the pegylated Inerferon/Ribaviron therapy until completion of the regimen on October 25, 2003, tolerating the therapy quite well despite weight loss, hair loss, anemia, and the above mentioned thyroid problems.  Her liver enzymes normalized during the treatment period ut began to rise notably on February 26, 2004.  Concurrent with the liver enzyme elevation she developed upper abdominal pain that heralded the probable recurrence of the Hepatitis C activity.  See D'Avirro Dec., ¶ 17.

On March 19, 2004, Petitioner underwent Hepatitis C PCR testing (viral load testing) which was found to be above 850,000.  This confirmed to Dr. D'Avirro that Petitioner was a relapser.  See D'Avirro Dec., ¶ 18.

Thereafter, Dr. D'Avirro referred Petitioner to an Infectious Disease specialist at Danbury Hospital, in Danbury, Connecticut for a consultation concerning her treatment for Hepatitis C.  Petitioner was seen by this Infectious Disease Specialist on May 14, 2004.   To date, however, a written report has not yet been received.  See D'Avirro Dec., ¶ 19.

### III. Argument: The Amended Petition Must Be Dismissed

#### A. The Only Proper Respondent In a Writ of Habeas Corpus Under 28 U.S.C. § 2241 Is The Warden Of The Correctional Facility Where The Petitioner Is Incarcerated

This civil action is being litigated under 28 U.S.C. § 2241, which is the appropriate statute for challenging the administration of sentences.  However, Petitioner has improperly named the Director of the Federal Bureau of Prisons, Harley G. Lappin, as respondent.

It is well settled that the warden of the institution where the Petitioner is currently being held is the proper respondent in a habeas action.  Kendall v. I.N.S., 261 F. Supp.2d 296, 299 (S.D.N.Y. 2003).  28 U.S.C. § 2243 provides that the writ, or order to show cause, "shall be

directed to the person having custody of the person detained." A prisoner's " 'custodian' for purposes of habeas jurisdiction 'is the warden of the prison or facility where the detainee is held[,] ... because it is the warden that has day-to-day control over the prisoner and who can produce the actual body.' " Kendall, 261 F.Supp.2d at 299(quoting Yi v. Maugans, 24 F.3d 500, 507 (3rd Cir. 1994)). Thus, the proper respondent in an inmate's habeas corpus petition is the warden at the place of Petitioner's incarceration.

In this case, the only proper respondent is Kuma Deboo, Warden at FCI Danbury, where Petitioner is incarcerated. Therefore, Harley G. Lappin should be dismissed as a respondent.

### B. The Claims in the Amended Petition are Moot

The Amended Petition should be dismissed because the issues presented have become moot. "A claim is moot when 'it is impossible for the court to grant any effectual relief whatever to a prevailing party' and thus any statement on the merits of the claim would constitute an improper advisory opinion." Garcia v. I.N.S. No. Civ.3:01CV1837(PCD), 2002 WL 32507835, *1 (D. Conn. May 30, 2002) (quoting In re Kurtzman, 194 F.3d 54, 58 (2d Cir.1999)). Put another way, "[a] party's case or controversy becomes moot either when the injury is healed and only prospective relief has been sought, or when it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury." Alexander v. Yale Univ., 631 F.2d 178, 183 (2d Cir. 1980).

In this case, it is not possible for this Court to grant Petitioner the relief she seeks. The Amended Petition seeks an order that the Petitioner's viral load be retested in April and October of 2004, and seeks a consultation with a medical specialist. Petitioner was in fact retested in March of 2004 and a medical consultation has been obtained. The only remaining relief,

retesting in October, 2004, is prospective. None of Petitioner's claim satisfy the requirements of justiciability. Alexander, 631 F.2d at 183. Accordingly, this case is moot.

    C.    **The Amended Petition Should Be Dismissed For Petitioner's Failure to Exhaust Her Administrative Remedies**.

The Amended Petition is also subject to dismissal because Petitioner failed to exhaust her available administrative remedies. The Bureau of Prisons' computerized data base reveals there is no record that Petitioner fully exhausted his administrative remedies as to every issue raised in the petition. Therefore, Petitioner is precluded from seeking relief from this Court.

Under the Prison Litigation Reform Act, a prisoner must exhaust "such administrative remedies as are available" before bringing a civil action in federal court. 42 U.S.C. §1997e(a). In Booth v. Churner, 532 U.S. 731 (2001), a unanimous Supreme Court held that Congress mandated completion of any prison administrative remedy process capable of addressing the inmate's complaint and providing some form of relief, "irrespective of the forms of relief sought and offered through administrative avenues." Booth, 532 U.S. at 741, n.6.

> The current exhaustion provision differs markedly from its predecessor. Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. See Booth [ ], 532 U.S. [at] 739 . . . All "available" remedies must now be exhausted; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective." See ibid.; see also id., at 740, n. 5 . . . Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. See id., at 741 . . . And unlike the previous provision, which encompassed only § 1983 suits, exhaustion is now required for all "action [s] ... brought with respect to prison conditions," whether under § 1983 or "any other Federal law."

Porter v. Nussle, 534 U.S. 516, 524 (2002).

The administrative remedy system at issue in the case was nearly identical to the three-level system in use in the federal prison system. Booth, 532 U.S. at 733. The Supreme Court affirmed dismissal of the case for failure to exhaust the available administrative remedy

procedure. The High Court also closed the door on any futility arguments made by the inmate, stating, "we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." Booth, 532 U.S. at 741, n.6. See also Beharry v. Ashcroft, 329 F.3d 51, 57-58 (2d Cir. 2003), as amended (July 24, 2003).

The Bureau of Prisons administrative remedy procedure is set out at 28 C.F.R. §542.10 et seq., and provides formal review of any complaint which relates to any aspect of the inmate's confinement. Under this process, inmates are encouraged to first attempt resolution of their complaints informally by discussing the matter with a member of their Unit Team. If informal resolution is insufficient to resolve the matter, the inmate may submit a formal written Administrative Remedy Request to the Warden, on a designated form, within twenty days of the event that triggered the inmate's complaint. 28 C.F.R. §§ 542.14.  If the inmate's formal request is denied, the inmate may submit an appeal to the appropriate Regional Director of the BOP, within twenty calendar days of the date of the Warden signed the response. 28 C.F.R. § 542.15(a). If the inmate is dissatisfied with the regional response, the inmate may appeal that decision to the General Counsel of the Federal Bureau of Prisons within 30 calendar days from the date of the Regional Director's response. 28 C.F.R. §§ 542.14, 542.15. Appeal to the Office of General Counsel is the final administrative appeal in the Bureau of Prisons.

With respect to habeas petitions, it is well settled that failure to exhaust each issue at all stages of the administrative remedy system is a proper basis for dismissal. Fuller v. I.N.S., 144 F.Supp.2d 72, 79 (D. Conn. 2000) (citing Gonzalez v. Perrill, 919 F.2d 1 (2d Cir. 1990)). The requirement that inmates exhaust their administrative remedies prior to seeking judicial relief serves three purposes: (1) allowing the appropriate agency to develop a factual record and apply

its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy. Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761-762 (3d Cir. 1996).

In the instant case, the evidence indicates that while the Petitioner has utilized the administrative remedy process in 2002 and 2003 to address some aspects of her treatment for Hepatitis C (see Zgrodnik Dec., Documents 1b, 1c, 1d), she has not filed a Request for Administrative Remedy seeking retesting or consultation with a medical specialist. See Document 1e. As such, Petitioner has failed to exhaust her administrative remedies with regard to the issues in the Amended Petition. While Petitioner complains that further exhaustion of her remedies would be too time consuming in light of her condition, see Amended Petition at pp. 10-11, this does not excuse her failure to exhaust Accordingly, the Amended Petition should be dismissed.

### D. Petitioner Cannot Establish a Violation of a Constitutional Right Which Would Entitle Her to Habeas Corpus Relief, Because She is Receiving Appropriate Medical Treatment at FCI Danbury

Even if the merits of the Amended Petition are reached, the petition should be dismissed because the Petitioner has failed to establish a constitutional violation. Petitioner contends that she has being provided with inadequate medical care for the treatment of her Hepatitis C while she has been incarcerated at FCI Danbury. She alleges that the Bureau of Prisons policy for Hepatitis C treatment is inconsistent with community standards. She claims that she should be retested in April and October of 2004 to determine her viral load, and given additional treatment if she has a detectable viral load. See Amended Petition ¶¶ 36-37. She seeks a consultation with

a medical specialist to determine the appropriate treatment plan.  See Amended Petition ¶¶ 40-41.  Petitioner cannot establish a violation of a constitutional right which would entitle her to habeas relief.

First, this constitutional claim is not appropriately brought under a § 2241 habeas petition.  A § 2241 petition challenges the execution of a sentence, including the conditions of the inmate's confinement.  Borja-Palacio v. U.S., NO. 99 CIV. 0734(AJP), 96 CR. 999(HB)AJP, 1999 WL 816165, at * 5, n.4 (S.D.N.Y. Oct 13, 1999).  A constitutional claim, such as Petitioner advances here, should be brought in a separate lawsuit apart from a habeas claim, under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).  Borja-Palacio, 1999 WL 816165, at * 5.

In addition, even if the merits of Petitioner's constitutional claim were reached in this case, she has failed to show such a serious violation.  "To establish an inadequate medical care claim of constitutional significance, a plaintiff must show that defendants were deliberately indifferent to his serious medical needs." McCoy v. Goord, 255 F.Supp.2d 233, 258 (S.D.N.Y. 2003)(citing Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994) and Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  In order to show deliberate indifference, objective and subjective elements must be present. "[T]he alleged deprivation of care [must] be sufficiently serious in objective terms: the plaintiff's condition must present a "condition of urgency, one that may produce death, degeneration, or extreme pain." McCoy, 255 F.Supp.2d at 258 (quoting Hathaway, 37 F.3d at 66 (citations omitted)). "The subjective element requires a showing that the defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm."  McCoy, 255 F.Supp.2d at 258 (quoting Hathaway, 37 F.3d at

66). While Petitioner does have a condition of urgency, she has not shown facts which support a claim of deliberate indifference.

Dr. D'Avirro, the Clinical Director at FCI Danbury, outlines in his declaration the extensive treatment Petitioner has received at FCI Danbury. See D'Avirro Dec., ¶¶ 3-19. Specifically, Petitioner has been seen and followed for chronic Hepatitis C at FCI Danbury since her first visit in the Infectious Disease Clinic on April 8, 2002. While at FCI Danbury she was approved for antiviral therapy for treatment of Hepatitis C. She received a combination of pegylated interferon and ribavirin beginning in October 2002. After Petitioner received 27 weeks of treatment, a second viral load test was conducted. The results of that test determined that Petitioner qualified for continued antiviral therapy in accordance with Bureau of Prisons Clinical Practice Guidelines for a total of 48 weeks. Upon retesting on March 19, 2004, Petitioner's viral load was found to be above 850,000 suggesting she had had a relapse. Petitioner was then referred to an Infectious Disease specialist at Danbury Hospital, in Danbury, Connecticut for a consultation concerning her treatment for Hepatitis C, which consultation occurred on May 14, 2004.

In sum, Petitioner's medical treatment at FCI Danbury has been appropriate and in compliance with BOP Clinical Guidelines. There is no support for the Petitioner's claim that the institution treated her condition with deliberate indifference.

**IV.     Conclusion**

For the foregoing reasons, the Respondents, Kuma DeBoo and Harley G. Lappin, request that the relief sought in the Amended Petition for Writ of Habeas Corpus be denied, and the Amended Petition dismissed.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


LAUREN M. NASH, ct01705
ASSISTANT U.S. ATTORNEY
UNITED STATES ATTORNEY'S OFFICE
157 CHURCH STREET, P.O. BOX 1824
NEW HAVEN, CT  06510
Telephone: (203) 821-3700
Facsimile:  (203) 773-5373
E-mail: lauren.nash@usdoj.gov

**CERTIFICATION OF SERVICE**

      This is to certify that a copy of the within and foregoing was sent on this 14th day of June, 2004, via first-class mail to:

Kathryn Emmett, Esq.
Emmett & Glander
45 Franklin Street
Stamford, CT 06901

                          LAUREN M. NASH
                          ASSISTANT UNITED STATES ATTORNEY